**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **DAMION DENNIS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-463-DB** |
| | § | |
| **CHARISMA EDGE,** *Warden*, **FCI La Tuna,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Damion Dennis, a former inmate at the La Tuna Federal Correctional Institution in Anthony, Texas, challenges a disciplinary action initiated against him while in custody through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed.

## BACKGROUND

Dennis was sentenced to a 41-month term of imprisonment followed by three years of supervised released by an Oregon District Court after he pleaded guilty to possession of a firearm in the furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *United States v. Dennis*, 3:21-cr-00250-MO-2 (D. Or.), J. Crim. Case, ECF No. 225. He was released from custody for this offense on January 12, 2026. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 56936-509, last visited Mar. 22, 2026).

On April 9, 2025, staff members discovered a bag containing forty to fifty blue pills in a stairwell at a Residential Reentry Center (RRC) in Phoenix, Arizona, operated by Behavioral Systems Southwest, Inc. Mem. in Supp., ECF No. 2 at 1. They reviewed security camera recordings and determined that the bag had fallen out of Dennis' pant leg as he walked up the stairs. Suspecting the pills to contain fentanyl, they contacted the Phoenix Police Department and insisted on the responding officers arresting Dennis and taking him to a local jail. *Id.*

The following day, RRC staff members issued an incident report for "inmate on escape." Resp't's Resp., Attach. 4 (Incident Report by the RRC), ECF No. 7-5. The Phoenix Community Corrections Manager (CCM) for the Bureau of Prisons (BOP), who was responsible for supervising federal inmates in residential facilities, also issued an incident report on Dennis' "technical escape." *Id*., Attach. 5 (Incident Report 4100693), ECF No. 7-6. These reports were not made available to Dennis until July 1, 2025, because he was not returned to a designated BOP facility until June 24, 2025.

Meanwhile, on April 10, 2025, the Center Discipline Committee (CDC) held a hearing in Dennis' absence and recommended that he lose Good Time Credits (GCTs) and "return to closer custody." *Id*., Attach. 7 (CDC Hearing Package), ECF No. 7-8 at 6–7. On April 16, 2025, a Discipline Hearing Officer (DHO) reviewed the CDC hearing package and found that the CDC's findings were "supported by a substantial factual basis," and the sanction recommended by the CDC was "proportionate to the offense committed." *Id.* at 5.

Dennis was sent to closer custody at La Tuna after his release from jail. On July 8, 2025, he was advised that his Unit Discipline Committee (UDC) hearing was delayed beyond five working days because of his confinement in jail and his technical escape from BOP custody. *Id*., Attach. 8 (Advisement of Incident Report Delay), ECF No. 7-9. The UDC reviewed the incident report on July 8, 2025, and referred the charge to a Discipline Hearing Officer (DHO) for a hearing. *Id*., Attach. 5 (Incident Report), ECF No. 7-6 at 2.

The DHO held a hearing with Dennis present on July 9, 2025. *Id*., Attach. 3 (Discipline Hearing Officer Report), ECF No. 7-4 at 1. The DHO reviewed Dennis' rights and afforded him the opportunity to present evidence. The DHO listened as Dennis complained "I have already been sanctioned for this; it is double jeopardy." *Id.* at 3. The DHO found that Dennis:

committed the prohibited act of Escape From a Work Detail, Non-Secure Institution, or Other Non-Secure Confinement, Including Community Confinement, With Subsequent Voluntary Return to Bureau of Prisons Custody Within Four hours, Code 200. The elements of this prohibited act consist of: Departure from custody without permission or authority or before release; includes failure to follow instructions of staff as to the limits of the activity; or commission of an act which prevents the inmate from returning at the time and place prescribed (such as an arrest based on probable cause) and the inmate is unaccounted for more than four hours.

*Id*. at 3. The DHO listed the evidence he relied on in his report and sanctioned Dennis with the loss of 27 days of GCTs. *Id*. at 4.

Dennis claims in his petition that because of a disciplinary action held at the RRC in his absence while he was in state custody, he lost 27 days of good conduct time and received a disciplinary transfer to La Tuna. *Id*. at 2. He complains that upon his arrival at La Tuna, he was required to appear in person before a discipline hearing officer and have his case reheard. *Id*. He adds he was again sanctioned with the loss of 27 days of GTCs. *Id*.

Dennis now makes two claims. First, he observes that the DHO at the RRC did not order the disciplinary transfer. Pet'r's Pet., ECF No. 1 at 6. He notes that Program Statement 7300.09 provides at paragraph 5.9.2. that "a disciplinary transfer … requires this sanction to be imposed by a DHO decision." Reply, ECF No. 8 at 4. He argues that his procedural due process rights were violated when he was transferred without a DHO imposing the sanction. *Id*. Second, he argues that the technical escape charge was erroneous as he always remained in custody. Pet'r's Pet., ECF No. 1 at 6. He asks the Court to order Respondent Charisma Edge to expunge this incident from his disciplinary record and reinstate his lost good time credits. *Id*. at 7.

### STANDARD OF REVIEW

"Habeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that … if condoned, result in a complete miscarriage of justice.'" *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*,

3

955 F.2d 367, 368 (5th Cir. 1992)). It will not be granted unless the petitioner shows that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**ANALYSIS**

**A. Exhaustion**

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37–38 (1972) (citations omitted); *see also Chavez v. Bragg*, EP-09-cv-6-KC, 2009 WL 506549, at *1 (W.D. Tex. Jan. 21, 2009) (noting that "[e]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted"; further noting that exhaustion "may produce a useful record for subsequent judicial consideration") (internal citations and quotations marks omitted).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). A petitioner bears the burden of demonstrating such circumstances.

Dennis, like all federal prisoners, "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the agency with custody over him. *Cf.*

*Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

Dennis filed an administrative remedy request with the BOP's Western Regional Office claiming his due process rights were denied during his disciplinary proceedings. Resp't's Resp., Attach. 11 (Administrative Remedy Record), ECF No 7-12. His request was rejected because he was designated to La Tuna at the time of the submission and needed to submit his request to the BOP's South Central Regional Office. *Id.* He then filed an administrative remedy request with the BOP's South Central Regional Office. *Id.* He also submitted a request to the BOP's Office of General Counsel before the South Central Regional Office responded. *Id.* at 3. The Office of General Counsel rejected the request and instructed Dennis to follow directions on the previous rejections and submit his request to the regional office. *Id*. On August 13, 2025, the BOP's South Central Regional Office rejected his request. Dennis was allowed the opportunity to resubmit his request within ten days of the rejection notice, but he did not resubmit his request.

The Court finds that Dennis did not comply with all administrative deadlines and procedures established by the agency with custody over him—or carry his burden of proving the futility of such an administrative review. *See Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Dennis had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Moot**

Although an action "is not moot simply because a § 2241 petitioner is no longer in custody[, it] is moot when the court cannot grant the relief requested by the moving party." *Salgado v. Fed.*

*Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. February 22, 2007) (citing *Brown v. Resor*, 407 F.2d 281, 283 (5th Cir. 1969); *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir.1987)). "Whether an [action] is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *Bailey*, 821 F.2d at 278. "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir.1999) (internal citations omitted)

"Although neither party has raised the mootness issue, this Court is compelled to raise the issue *sua sponte*, since the issue implicates Article III case or controversy considerations." *Donovan v. Air Transp., Dist. Lodge No. 146, Int'l Ass'n of Machinists & Aerospace Workers*, AFL-CIO, 754 F.2d 621, 624 (5th Cir. 1985).

Dennis' release from BOP custody on January 12, 2026, may have mooted his request for the Court to order Edge to reinstate his lost GTCs. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 56936-509, last visited Mar. 22, 2026); Pet'r's Pet., ECF No. 1 at 7. Still, "the possibility that the district court may alter [Dennis'] period of supervised release pursuant to 18 U.S.C. § 3582(e)(2), if it determines that he has served excess prison time, [may prevent his] petition from being moot." *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006). But even if Dennis had served a longer custodial sentence than he was supposed to, he is not entitled to "'automatic credit' as a means of compensation." *United States v. Jeanes*, 150 F.3d 483, 485 (5th Cir. 1998).

Additionally, Dennis did not seek a modification of his term of supervised release in his § 2241 petition. Even if Dennis had sought such relief, the Court would not have the jurisdiction to modify the terms of his supervised release. This is because—absent a transfer of jurisdiction over his supervised release to the Western District of Texas—only the sentencing court in the District

of Oregon has authority to modify the terms of his supervised release. *See* 18 U.S.C. § 3601 ("A person who has been … placed on supervised release … shall … be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court."); *id*. § 3605 ("A court to which jurisdiction is transferred under this section is authorized to exercise all powers over the probationer or releasee that are permitted by this subchapter ..."). Thus, this Court cannot order Edge to reinstate Dennis' lost GTCs, and his claim is moot.

### C. Due Process

A prisoner's challenge to a disciplinary action may fall within the scope of 28 U.S.C. § 2241. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). But before a prisoner may obtain habeas relief, he must first show that his disciplinary action resulted in a punishment which intruded on a liberty interest. *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995). And a prisoner's constitutionally protected liberty interest will be "limited to freedom from restraint which … imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). So, for example, a prisoner has a liberty interest in his accumulated GTCs.  *Henson v. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). But an inmate has no liberty interest in unlimited telephone use. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).

When a prisoner faces a loss of a protected liberty interest through a disciplinary hearing, he is entitled to the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). But a prisoner's "disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. For a prison disciplinary proceeding to comport with the requirements of due process, a prisoner need only be afforded the following minimal procedural safeguards: (1) advance written notice of the disciplinary charges; (2) an opportunity to present evidence in his defense; and (3) a written

statement by the factfinder regarding the evidence relied on and reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). And a prisoner must be presented with "some facts" or a "modicum of evidence" which supports the disciplinary decision. *Id*. at 454–55.

A court's determination "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455; *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) ("[T]he court may act only where arbitrary or capricious action is shown."). Indeed, a court's review is "extremely deferential", and it will overturn a disciplinary proceeding "only where no evidence in the record supports the decision." *Morgan v. Dretke*, 433 F.3d 455, 458 (5th Cir. 2005); *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001).

According to BOP procedures, if an inmate escapes or is otherwise absent, "the DHO will conduct a hearing in [the inmate's] absence at the institution where [the inmate] was last confined." Resp't's Resp., Attach. 10 (BOP PS 5270.09), ECF No. 7-11 30. "When an inmate returns to custody following an absence during which sanctions were imposed by the DHO, the Warden has the charges reheard before the DHO, ordinarily within 60 days after the inmate's arrival at the institution to which he/she is designated after return to custody, following an appearance before the UDC at that institution." *Id*.

Dennis arrived at La Tuna on June 24, 2025, and the DHO hearing was held within 60 days after his return. Dennis claims that his due process was violated because: (1) he was transferred to La Tuna, which was not part of the DHO sanction; and (2) the Phoenix Police Department removed him from the RRC. Pet'r's Pet., ECF No. 1 at 6. Nevertheless, neither of these points are related to Dennis's due process rights required by *Wolff*. In fact, BOP's designation decision is not subject to judicial review as the authority to determine an inmate's place of confinement vests sole

authority in the Director of the BOP. 18 U.S.C. § 3621.

Additionally, Dennis cannot establish that the disciplinary process lacked any of the elements required by *Wolff*. He received a copy of the incident report on July 1, 2025. Resp't's Resp., Attach. 4 (Incident Report), ECF No. 7-5. He acknowledged on July 8, 2025, that he received notice of the DHO hearing and that he had been advised of his rights pursuant to *Wolff* standard. *Id.*, Attach. 6 (Inmate Rights at Discipline Hearing), ECF No. 7-7; Attach. 9 (Notice of Discipline Hearing Before the DHO), ECF No 7-10. He was provided with an opportunity to appear in person before the DHO, have the assistance of a second person, call witnesses, and present documentary evidence. *Id.*, Attach. 3 (Discipline Hearing Officer Report), ECF No. 7-4 at 1-2. He did not request any assistance at the hearing. *Id.* His DHO provided a written report and concluded there was some evidence that Dennis committed the prohibited act alleged in the notice of his hearing. Dennis has not met his burden of showing that his due process rights identified in *Wolff* were violated, and he is not entitled to § 2241 relief.

## CONCLUSION AND ORDERS

The Court concludes that Dennis has failed to exhaust his administrative remedies and his claims lack merit. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Petitioner Damion Dennis' "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this 25th day of March 2026.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

9